UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHAMBERS OF
RONALD J. HEDGES
UNITED STATES MAGISTRATE JUDGE

MARTIN LUTHER KING, JR.
FEDERAL BUILDING AND COURTHOUSE
50 WALNUT STREET
NEWARK, NJ 07101
973-645-3827

October 24, 2006

**LETTER-OPINION AND ORDER**
**ORIGINAL FILED WITH CLERK OF THE COURT**

Aaron Van Nostrand
Duane Morris, LLP
744 Broad Street
12th Floor
Newark, NJ 07102

Gregory Robert Haworth
Duane Morris, LLP
744 Broad Street
12th Floor
Newark, NJ 07102

Kathryn M. Decker
Lowenstein Sandler, PC
65 Livingston Avenue
Roseland, NJ 07068

Vanessa Ann Ignacio
Lowenstein Sandler, PC
65 Livingston Avenue
Roseland, NJ 07068

      **Re: CUTTR Holdings, LLC et al v. Patinkin et al:**
      **Civil Action No: 05-04537 (WJM)**

**INTRODUCTION**

This matter comes before me on the motion of defendants Seth S. Patinkin, Bella Prosper, LLC, and Hao Fang, LLC for an administrative stay. Plaintiffs CUTTR////Holdings, LLC and

CUTTR, Inc. (collectively "CUTTR") oppose the motion.  The motion was referred to me by Judge Martini.  I have considered the papers submitted in support of and in opposition to the motion.  There was no oral argument.  Rule 78.

## BACKGROUND

This dispute arises out of a business venture between Patinkin and Mark Graham.  Sometime in 2003, Patinkin, a Princeton PhD candidate, met with Graham, an investment banker, to discuss forming a high-tech company to market hashing software that Patinkin had invented.  They formed the company in 2004, naming it "CUTTR, Inc."  Patinkin served as President/CEO of CUTTR and took charge of developing the software and other intellectual property.  Graham served as Chairman of the Board and took charge of CUTTR's finances and management.  In the summer of 2005, Patinkin and Graham had a dispute concerning the means by which the next capital round for CUTTR would be funded.  As a result, Patinkin resigned.

Subsequently, CUTTR filed the Complaint subjudice against Patinkin and the two LLCs he had formed in connection with his work for CUTTR, alleging conversion, fraud and breach of fiduciary duty.  The Complaint alleges that Patinkin diverted $165,575 from CUTTR's corporate funds to himself and the LLCs.  CUTTR's management also referred these allegations to the United States Attorney for the Southern District of New York.  Defendants allege that there is now a criminal investigation pending against them.  Defendants seek an administrative stay pending the outcome of the criminal investigation.

## DISCUSSION

A district court may issue a stay in a civil action pending the outcome of a parallel criminal investigation or proceeding.  <u>Walsh Securities, Inc. v.  Cristo Property Management,</u>

LTD, 7 F. Supp.2d 523, 526 (D.N.J. 1998).  A stay is an "extraordinary remedy."  Walsh Securities, 7 F.Supp.2d at 526.  The decision to grant or deny a stay requires the court to weigh the following factors:

> 1) the extent to which the issues in the criminal and civil cases overlap; 2) the status of the case, including whether the defendants have been indicted; 3) the plaintiff's interest in proceeding expeditiously weighed against the prejudice to plaintiff caused by a delay; 4) the private interests of and burden on defendants; 5) the interests of the court; and 6) the public interest. [Walsh Securities, 7 F.Supp.2d at 526-27]

Here, defendants' evidence of a pending criminal investigation is vague and insufficient to support a stay.  The evidence is: First, a statement in their brief describing a telephone conversation between an Assistant United States Attorney and one of their attorneys.  Defendants allege that the Assistant United States Attorney told their attorney that there is a pending criminal investigation.  This alleged statement is not corroborated by affidavit or other evidence.  Second, defendants state that plaintiffs admitted in their September 25, 2006, memorandum that "CUTTR is aware of a criminal investigation by the United States Attorney's Office into Patinkin's conduct."

The first factor of the Walsh Securities test directs the court to examine the similarity of issues in the civil and criminal proceedings to determine whether there is significant overlap.  This is "'the most important issue at the threshold' in determining whether or not to grant a stay."  7 F.Supp.2d at 527.  Defendants' only evidence that the alleged criminal investigation involves the same issues as this litigation is an uncorroborated statement from an unnamed Assistant United States Attorney.  This is too vague to warrant a stay.

The second factor directs the court to examine the status of the criminal proceeding.

    According to Walsh Securities:

> The strongest case for a stay of discovery in the civil case occurs . . . after an indictment is returned.  The potential for self-incrimination is greatest during this stage, and the potential harm to civil litigants arising from delaying them is reduced due to the promise of a fairly quick resolution of the criminal case under the Speedy Trial Act.  On the other hand, because there is less risk of self-incrimination, and more uncertainty about the effect of a delay on the civil case, *pre* indictment requests for a stay are generally denied.
> [7 F.Supp.2d at 527].

At issue here is an alleged criminal investigation, not an indictment.  Therefore, this factor weights against a stay.

    Third, plaintiffs would be prejudiced by a delay.  Plaintiffs filed this action one year ago and have not been able to obtain discovery.  These circumstances weigh against a stay.

    Fourth, a parallel criminal proceeding can harm the defendants' interests by forcing them to "choose between waiving their Fifth Amendment rights and defending themselves in the civil lawsuit or asserting the privilege and probably losing the civil case."  Walsh Securities, 7 F.Supp.2d at 528.  This is so because, "[i]n a civil case, the finder of fact is not prohibited from making an adverse inference from a party's assertion of the fifth amendment privilege."  Digital Equip. Corp. v. Currie Enterprises, 142 F.R.D. 8, 13 (D. Mass. 1991).  Therefore, this factor favors a stay.

    Fifth, in cases where there has not been an indictment, the court's interest is typically best served by denying the motion to stay.  At this stage, the possibility of a criminal prosecution is too tenuous to justify delaying the civil litigation.  As the court in Digital Equipment stated: "this court finds it unrealistic to rely upon fortuitous events to manage its docket.  '[A] policy of freely granting stays solely because a litigant is defending simultaneous multiple suits interferes' with

4

judicial administration." 142 F.R.D. at 13.  Therefore, this factor also weighs against a stay.

Similarly, the sixth factor weighs against a stay because the public has an interest in prompt resolution of litigation.  Digital Equip. Corp., 142 F.R.D. at 14.  In sum, five factors weigh against a stay and one in favor of a stay.  Under these circumstances, the motion for an administrative stay is **DENIED.**

I will conduct a status conference on November 8, 2006, at 2:00 PM.

**SO ORDERED.**

                                                        s/ Ronald Hedges
                                                        United States Magistrate Judge

Original:   Clerk

cc:   All addresses
      Hon. William J. Martini, U.S.D.J.
      File