UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CUTTR HOLDINGS LLC, CUTTR, INC.,**<br><br>Plaintiffs,<br><br>v.<br><br>**SETH S. PATINKIN, BELLA PROSPER LLC, HAO FANG LLC,**<br><br>Defendants. | MASTER FILE: 05-CV-4537<br>(WJM)<br><br><br>OPINION<br><br>HON. WILLIAM J. MARTINI |

Aaron Van Nostrand
Greenberg Traurig LLP
200 Park Avenue
P.O. Box 677
Florham Park, NJ 07932-0677

Gregory Robert Haworth
Duane Morris, LLP
744 Broad Street
Suite 1200
Newark, NJ 07102-1997

(*Counsel for Plaintiffs*)

Kathryn M. Decker
Lowenstein Sandler PC
65 Livingston Avenue
Roseland, NJ 07068

Matthew F. Richter
Midlige Richter, LLC
645 Martinsville Road
Basking Ridge, NJ 07920

Timothy Douglas Wedeen

Wedeen & Kavanagh
61 West Ivy Lane
First Floor
Englewood, NJ 07631

Scott Lee Walker
Lowenstein Sandler, LLP
65 Livingston Avenue
Roseland, NJ 07068

Vanessa Ann Ignacio
Lowenstein Sandler, LLP
65 Livingston Avenue
Roseland, NJ 07068

(*Counsel for Defendants*)

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiffs and Third-Party Defendants move for an order striking Defendant Patinkin's pleadings and for attorney's fees and costs on the ground that Patinkin has submitted false documents to the Court. The Court finds that Patinkin indeed has submitted false documents to the Court and orders Patinkin to reimburse Plaintiffs and Third-Party Defendants for any resulting costs and attorney's fees. However, this Court finds that Patinkin's abuses are insufficiently severe to warrant striking his pleadings.

**I.      FACTS AND PROCEEDINGS**

    **A.      Facts Underlying the Litigation**

This motion requires the Court to summarize only a few of the facts giving rise to

the litigation.

This suit stems from the collapse of business entities and relationships created to manufacture and market a product called "CUTTR CHT." CUTTR CHT was invented by Seth Patinkin. (Countercl. ¶ 10.) During the relevant period of time, Patinkin and his business partners Mark Graham, Alexander Baytin, and Peter Getz incorporated CUTTR Inc. and CUTTR Holdings LLC. (Countercl. ¶¶ 10–26.) The parties transferred the CUTTR CHT patent to CUTTR Inc., which they made a wholly owned subsidiary of CUTTR Holdings LLC. (Countercl. ¶¶ 10–26.) The parties sought to subcontract the research and development of CUTTR CHT to both Russian and U.S. labs, but they wished (for reasons irrelevant to this motion) to distance themselves from these subcontractors. (Countercl. ¶¶ 28–29, 39.) Accordingly, Patinkin formed Bella Prosper LLC and Hao Fang LLC, companies that would act as intermediaries for the parties' payments to subcontractors. (Countercl. ¶¶ 28–29.) Against this backdrop, irreconcilable differences grew between Patinkin and the other parties, and Patinkin abandoned the venture.[1] (Countercl. ¶¶ 44–53.)

This falling out spawned the litigation before this Court. CUTTR Holdings, LLC and CUTTR Inc. sued Patinkin on a number of legal theories. Patinkin counterclaimed and also sued Graham, Baytin, and Getz as Third-Party Defendants.

---

[1]The nature of Patinkin's departure is a point of dispute in this litigation. (Countercl.¶¶ 55–59.)  Because it is not relevant to the resolution of this motion, however, this Opinion will not further discuss it.

### B. The Instant Motion

The litigation thus far has been rancorous. Both sides have repeatedly accused each other of misconduct, and this Court has repeatedly been called upon to mediate.

In this latest round of pettifogging, Plaintiffs and Third-Party Defendants (collectively "CUTTR") move for an order striking Patinkin's pleadings and for attorney's fees and costs. (Mot. to Strike Pleadings.) CUTTR claims that Patinkin has engaged in fraud on the Court in three separate instances. (Mem. in Support of Mot.1–3.) Specifically, CUTTR claims that Patinkin made three false representations to the Court: (1) in a previous motion to disqualify CUTTR's counsel, (2) in a response to Graham's motion for a temporary restraining order, and (3) in scheduling conferences regarding Patinkin's deposition. (Mem. in Support 1–2.)

## II. DISCUSSION

### A. Patinkin's Motion to Disqualify CUTTR's Counsel

Patinkin made certifications to this Court in connection with a motion he made to dismiss CUTTR's counsel, which are at odds with a certification submitted by CUTTR's counsel, Michael Schwamm.

In December 2006, Patinkin filed a motion to disqualify CUTTR's counsel, Duane Morris LLP. (Mot. to Disqualify.) Patinkin argued that disqualification was appropriate because between December 2004 and January 2005 he had discussed the formation of Bella Prosper LLC and Hao Fang LLC with Duane Morris attorney Michael Schwamm.

(Mot. to Disqualify, Certification of Seth Patinkin ¶¶ 25, 31–33.)  Patinkin claimed that Schwamm possessed "confidential information that is now at issue in this lawsuit." (Patinkin Certification ¶ 33.)

Schwamm, however, denied these assertions in CUTTR's opposition.  Schwamm declared that he "did not know of the existence of Bella Prosper, LLC ("Bella Prosper") until August 2005" and that he "was not involved in the discussions regarding the formation and use of Bella Prosper."  (Opp'n to Mot. to Disqualify, Certification of Michael Schwamm ¶¶ 23, 24.)  Similarly, Schwamm also declared that he "was not involved in the discussions regarding the formation and use of Hao Fang" and that he "did not know of the existence of Hao Fang until August 2005."  (Schwamm Certification ¶ 29.)

CUTTR now alleges that Schwamm's declaration proves that Patinkin's motion to disqualify Duane Morris was based on a falsehood put forth in Patinkin's certification. (Mem. in Support 5–10.)  But given that this factual incongruity arises from diametrically opposed certifications and that no apparent basis exists for crediting one over the other, this Court declines to find that Patinkin submitted false declarations to the Court in connection with his motion to disqualify CUTTR's counsel.

**B.     Patinkin's Response to Graham's Motion for a TRO**

Patinkin submitted false certifications in connection with his opposition to a motion for a TRO made by Graham.

5

In December 2006, Graham's friends, family, and business associates received a harassing email from an unknown sender. (Decl. of Aaron Van Nostrand in Support of Mot. to Strike Pleadings Ex. 5.) The email contained electronic copies of a legal complaint against Graham in a case unrelated to this one and copies of Patinkin's counterclaim. (Ex. 5.) The email warned its recipients "[y]ou should read the attached court proceedings – you may want to rethink your opinion." (Ex. 5.) Graham believed Patinkin to be behind the emails and moved in this Court for a TRO restraining Patinkin from sending such emails in the future. (Application of Graham for an Order to Show Cause and Temporary Restraints.)

Patinkin opposed the motion, disclaiming any role in these emails. In Patinkin's brief opposing this motion, Patinkin "categorically denie[d] any involvement in sending these e-mails." (Br. in Opp'n to Mot. for a Prelim. Inj. 1.) Patinkin further argued that "[g]iven that the District Court's docket and filings are a matter of public record and can be accessed by the public, scores of other individuals could have obtained the counterclaim and sent the offending e-mails." (Br. in Opp'n to Mot. for a Prelim. Inj. 5.) Patinkin further disclaimed any role in sending these emails in a certification that accompanied his opposition to Graham's TRO motion. Patinkin certified that he "did not send the e-mail . . . that is the subject of Mark R. Graham's ("Graham") Motion" and that he "did not have anyone else send the e-mail." (Br. in Opp'n to Mot. for a Prelim. Inj., Certification of Seth Patinkin ¶¶ 2, 3.) Thus Patinkin vehemently disclaimed—expressly

6

and impliedly—any "involvement in sending these e-mails." (Br. in Opp'n to Mot. for a Prelim. Inj. 1.)

This disclaimer was dishonest. The emails were sent by Patinkin's business associate Dr. Michael Lissack with Patinkin's assistance. (Mem. in Support 11; Br. in Opp'n 3; Van Nostrand Decl., Ex. 2 175:6–:11.) Just before Lissack sent the offending emails, Patinkin sent to Lissack both an electronic copy of the documents that Lissack attached to his emails and the electronic list of Graham's friends, family, and associates to whom Lissack addressed his emails. (Ex. 2 176:1–:19; Van Nostrand Decl. Ex 7.) Furthermore, Patinkin was a recipient of Lissack's harassing emails, and Patinkin admitted knowing what Lissack had done with the information he had provided. (Ex. 2 174:4–:8.) Thus Patinkin's certifications to this Court that he had no involvement in sending these emails are false.[2]

CUTTR now offers this false certification in support of its motion to strike Patinkin's pleadings.

### C.    Patinkin's Deposition

CUTTR alleges that Patinkin submitted false certifications to this Court in connection with a request to continue his deposition, but this Court is unable to find

---

[2] Patinkin disclaims that he knew how Lissack would use the email addresses and documents he sent (Ex. 2 174:4–:8), and this Court possesses no substantial evidence suggesting otherwise. Nevertheless, it was disingenuous for Patinkin to disclaim "any involvement" in sending the emails and to remain silent about his actual role.

support for such a proposition.

CUTTR sought for some time to depose Patinkin. On September 24, 2007, the Court ordered Patinkin to "make himself available for deposition immediately."

This, however, proved to be more difficult than expected because of two then-upcoming events. First, Patinkin would be away on his honeymoon from October 1 until October 12. (Van Nostrand Decl. ¶ 9; Patinkin Decl. ¶ 6.) Second, Patinkin was scheduled to appear in Indiana state court on October 22 in an unrelated proceeding.[3] (Patinkin Decl. ¶ 3.)

The scheduling was further complicated when Patinkin's counsel agreed to a deposition date without consulting Patinkin. On September 27 counsel for both sides planned and on October 5 Patinkin's counsel confirmed that the deposition would occur on October 22, 2007, the same date as Patinkin's hearing in Indiana. (Van Nostrand Decl. at ¶¶ 9, 10.) CUTTR puts forth no evidence to suggest that Patinkin's counsel knew of the conflict. Rather, the evidence suggests that Patinkin, who was on his honeymoon when this occurred, was unaware of the scheduling conflict until he returned on October 12, at which point he immediately sought leave from both this Court and the Indiana court to reschedule.[4] (Patinkin Decl. ¶¶ 6–9; Van Nostrand Decl., Ex. 8.) This Court

---

[3]The parties discuss the merits of this unrelated suit at length, CUTTR in an attempt to discredit Patinkin, and Patinkin in rebuttal. This Court finds discussion of the Indiana suit wholly extraneous and will not entertain such asides.

[4]On October 16, Patinkin's counsel in this case notified CUTTR that the deposition planned for October 22 would have to be rescheduled. (Ex. 8.) On October 18,

accordingly issued an order allowing Patinkin to reschedule the deposition for November 1.

There is no evidence of any bad faith or misrepresentations to this Court in connection with Patinkin's deposition, so this Court dismisses that portion of CUTTR's argument.[5]

### D.     Remedy for Patinkin's False Certifications

As explained above, Patinkin submitted false statements to the Court in connection with his opposition to Graham's motion for a TRO.  Given that litigation requires the trustworthiness and integrity of its participants, such dishonesty demands a response from this Court.

The Court believes that the appropriate response is to award to CUTTR any

---

Patinkin's counsel notified the opposing party in the Indiana case of the conflict.  (Van Nostrand Decl., Ex. 9 ¶ 9.)

[5]CUTTR makes two arguments with respect to Patinkin's deposition, both of which are without merit.  First, CUTTR argues that after this Court ordered the parties to reschedule Patinkin's deposition, Patinkin's counsel continued to represent to the Indiana court that the deposition in this case conflicted with the Indiana trial.  But as stated above, this Court will not address alleged misconduct in the Indiana trial.
     Second, CUTTR argues that Patinkin represented to this Court on October 17 that it had already tried to continue the Indiana court date, while in reality Patinkin's counsel did not attempt to reschedule the Indiana court date until October 18.  But this allegation is based solely on a certification from the opposing party in the Indiana case stating that "[o]n Thursday, October 18, 2007, around noon, I received a message from Mr. Lamb letting me know that he would probably be requesting a continuance."  (Ex. 9 ¶ 9.)  This certification does not state when Patinkin's counsel sent this message or whether it was the first such message sent by Patinkin's counsel.  Accordingly, this Court cannot find that Patinkin's representation to this Court on October 17 that it had already tried to continue the Indiana trial was false.

attorney's fees or costs resulting from Patinkin's dishonesty.  Federal Rule of Civil Procedure 11(b) provides that when an attorney files a paper with this Court, the attorney represents in good faith that facts contained therein have evidentiary bases.  Rule 11 allows this Court to impose sanctions, including resulting attorney's fees and costs, upon noncomplying parties.  The Court may impose such sanctions against any attorney or party signing the offending document; all parties who sign such documents to be submitted to this Court have a duty of honesty to the judicial system.  Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc., 498 U.S. 533, 541 (1991).

Here, this Court finds Patinkin responsible for the false submissions.  Patinkin personally signed the certifications to his opposition implying that he had no involvement with the emails, an implication that is false.  This Court accordingly welcomes submissions from CUTTR detailing any attorney's fees and costs resulting from Patinkin's claims that he had no involvement with Lissack's emails.

However, this Court declines to strike Patinkin's pleadings as an additional sanction.  While this Court certainly possesses the authority to strike a pleading as a sanction for fraud on the court, Combs v. Rockwell Intern. Corp., 927 F.2d 486, 488 (9th Cir. 1991), dismissal is a severe and rarely appropriate sanction.  See Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 642–43 (1976).  When determining whether dismissal is an appropriate sanction, courts should consider (1) the extent of the party's personal responsibility, (2) the prejudice his actions have caused his adversary, (3)

any history of such conduct, (4) any evidence of bad faith, (5) the effectiveness of other sanctions, and (6) the merit of the dismissed pleading. Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984).

Here, Patinkin was personally responsible for the false certification, that certification impeded CUTTR's ability to investigate, Patinkin appears to have a history of suspect litigation tactics,[6] and the nature of Patinkin's falsehood suggests that it was calculated and in bad faith. However, this Court finds dispositive that an award of attorney's fees and costs is an effective sanction and that Patinkin's claims may have merit (although the litigation has not yet afforded this Court an opportunity to examine the parties' evidence in depth). Accordingly, the Court declines to strike Patinkin's pleadings.

Although the Court does not dismiss Patinkin's pleadings, the Court nevertheless reminds all parties that it retains the right to strike claims in response to any further litigation abuses.

### III.  CONCLUSION

This Court orders Patinkin to pay CUTTR any reasonable attorney's fees resulting from Patinkin's false submissions in opposition to Graham's motion for a TRO. CUTTR shall make such submissions to this Court as necessary for it to calculate such an award.

---

[6]For example, on September 21, 2007, CUTTR moved to strike Patinkin's pleadings based on his refusal to submit to a deposition until he had deposed Graham and Getz.

11

However, the Court declines to strike Patinkin's pleadings.  Accordingly, CUTTR's motion is **GRANTED** in part and **DENIED** in part.

s/ William J. Martini
William J. Martini, U.S.D.J.
